## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLANK RIVER SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:19-cv-00418 |
| v. | ) |
| | ) |
| TOWLINE RIVER SERVICE, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff, Blank River Services, Inc. ("Blank River") brings a complaint in admiralty against Defendant, TowLine River Service, Inc. ("TowLine"). Among other things, Blank River alleges that it chartered a towboat to TowLine and that TowLine returned the vessel in an unacceptable condition. Blank River seeks to recover damages based on a breach of the charter agreement, a maritime contract. Blank River also brings claims of tortious damage and conversion, unjust enrichment, and negligent bailment. Blank River's Complaint also asserted an independent claim for "Punitive Damages" as Count V. (*See* Compl. ¶¶ 45–47, ECF No. 1). This claim was dismissed by the Court on the record during the Oral Argument on TowLine's Motion to Dismiss on July 11, 2019, (ECF No. 17), as both parties agreed that a claim for punitive damages cannot be asserted as a separate and independent cause of action. The Court dismissed Count V without prejudice as a stand-alone claim. (ECF No. 20).

Now before the Court is TowLine's Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Lack of Jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 7). TowLine seeks dismissal of the remaining claims asserted

against it. For the reasons that follow, the Court concludes that this case is properly before the Court and there are no exceptional circumstances in this case that would justify abstaining. The Court further concludes that Counts II and IV are not barred by Pennsylvania's "gist of the action" doctrine because federal law governs this dispute and, even if Pennsylvania law did apply, the duties that were alleged to have been breached in Counts II and IV arise independently of the charter agreement. Finally, the Court concludes that it would be premature to dismiss Count III, seeking equitable relief under an unjust enrichment theory, because TowLine disputes whether the charter agreement was in effect. For all of these reasons and as further explained below, the balance of TowLine's Motion will be DENIED.

## I. BACKGROUND

### a. Factual Background

The following material facts are derived from Blank River's Complaint and attached exhibits. (Compl., ECF No. 1). At all relevant times to this case, Blank River owned the towboat M/V FRANCIS J. BLANK (the "Towboat"). (*Id.* ¶ 1). On or about February 8, 2009, Blank River and TowLine entered into a charter agreement (the "Charter Agreement"), and pursuant to the Charter Agreement, TowLine took possession of the Towboat in or about March 2009. (*Id.* ¶¶ 5–6). The Charter Agreement provided that TowLine was responsible for maintaining the Towboat, (Charter Agreement ¶ 9, ECF No. 1-2), and further provided that TowLine was responsible for reimbursing Blank River for the costs of refueling the Towboat in the event that the Towboat was returned to Blank River with less fuel than when TowLine took possession of the Towboat, (*id.* ¶ 7). The Towboat was allegedly in excellent physical and mechanical condition when TowLine took possession of it, and the Towboat's 9,500-gallon fuel tanks were topped-off and full. (Compl. ¶¶ 7–8). TowLine continuously and exclusively possessed and

-2-

operated the Towboat from March 2009 until June 2, 2018, when TowLine returned the Towboat to Blank River. (*Id.* ¶ 14). The Towboat was allegedly returned with only 4,488 gallons of fuel and in "appalling condition," with several pieces of equipment missing, broken, or damaged. (*Id.* ¶¶ 15, 17). Blank River represents that it has been unable to re-charter the vessel since TowLine returned it. (*Id.* ¶ 20). On March 1, 2019, Blank River sent TowLine a notice of default listing amounts owed due to these and other alleged breaches of the Charter Agreement. (*Id.* ¶ 25).

### b. Related Litigation

Following receipt of Blank River's notice of default, TowLine filed a declaratory judgment action in the Court of Common Pleas for Allegheny County, Pennsylvania, on April 5, 2019, pending on that court's docket as No. GD-19-005139. (*See* ECF Nos. 8-1, 8-2). TowLine demanded a jury trial, (ECF No. 8-2), served document requests, (ECF No. 8-3), and noticed the depositions of Blank River (as a corporate entity) and a Blank River employee, (ECF Nos. 8-4, 8-5). Blank River initiated this suit on April 12, 2019, one week after TowLine filed its declaratory judgment action.

Blank River filed Preliminary Objections to TowLine's complaint on May 13, 2019, and these were overruled by the Court of Common Pleas in their entirety on June 25, 2019. (ECF Nos. 16-1, 16-2). Blank River thereafter filed a Motion for Reconsideration of the Court of Common Pleas' Order of June 25, 2019, (ECF No. 16-6), and also filed a Motion to Stay Discovery, (ECF No. 16-7). Meanwhile, TowLine renewed its request for document production and re-noticed the depositions of Blank River and a Blank River employee. (ECF Nos. 16-3, 16-4, 16-5).

## II. STANDARD OF REVIEW

A claim may be dismissed for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), or when the Court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss the Court conducts a two-part analysis, first separating the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court "may disregard any legal conclusions," *id.*, and then must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, the Court need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a "probability requirement," but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### a. There are no "exceptional circumstances" justifying abstention in this case.

TowLine asserts that this Court should abstain from hearing this case pursuant to the *Colorado River* abstention doctrine.[1] *See Colorado River Water Conservation Dist. v. United*

---

[1] Despite TowLine purportedly bringing its Motion in part pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court notes that TowLine does not appear to actually challenge the Court's subject-matter jurisdiction. The doctrine of abstention applies only where the exercise of jurisdiction *is* otherwise proper in the federal forum. *See, e.g., Hamilton v. Bromley*, 862 F.3d 329, 332 (3d Cir. 2017) ("[A] federal court can abstain from exercising its

*States*, 424 U.S. 800 (1976). Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). However, in very limited circumstances, a district court may abstain from hearing a case otherwise properly before it in light of parallel proceedings in a state court. *See generally Colo. River*, 424 U.S. at 817–20. But this is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *id.* at 813, and "[o]nly the clearest of justifications will warrant dismissal," *id.* at 819 (internal quotations omitted).

Whether abstention is appropriate under the *Colorado River* doctrine is a two-part inquiry: a court must first determine whether the state-court proceedings are "parallel," and if so, the court then "look[s] to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307–08 (3d Cir. 2009) (citation omitted). A court need not determine whether a state-court proceeding is parallel if the actions do not present the requisite "extraordinary circumstances" warranting abstention. *See id.* at 308. A state-court proceeding is considered to be "parallel" when it presents "substantially identical claims [and] nearly identical allegations and issues." *Id.* at 307 (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)) (alterations in original). Courts in the Third Circuit consider the following six factors in determining whether a case presents "extraordinary circumstances" warranting abstention:

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls;

jurisdiction only if it has jurisdiction to abstain from."). Thus, the Court will treat TowLine's "subject-matter jurisdiction" challenge as, instead, an argument for this Court to abstain from exercising its jurisdiction. No basis has been asserted in TowLine's Motion or associated briefing to call this Court's subject-matter jurisdiction into question.

and (6) whether the state court will adequately protect the interests of the parties.

*Hamilton*, 571 F.3d at 308 (quotation omitted) (alterations in original).

> i. The Court will assume that this case is parallel to the declaratory judgment action in state court.

TowLine asserts that the proceedings before this Court and the Court of Common Pleas are "parallel" because they involve the same parties and the same legal and factual issues. TowLine further asserts that the proceedings are parallel because the resolution of the issues before the Court of Common Pleas would dispose of all of the legal and factual issues before this Court. Blank River does not vigorously dispute that there is a complete identity of the parties between the two proceedings and, at minimum, a substantial overlap of factual and legal issues. Rather, Blank River argues that such proceedings cannot be parallel because Blank River seeks money damages in this action whereas TowLine seeks only declaratory relief before the Court of Common Pleas. *See Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985) (holding that the "test for application of the parallel litigation exception set forth *Colorado River* . . . cannot be satisfied . . . since the federal court plaintiffs seek money damages while the state court plaintiffs did not.").

Some district courts in this Circuit have seemingly interpreted this language from *Harris* as announcing a bright-line rule—actions cannot be parallel for *Colorado River* doctrine purposes when declaratory relief is sought in one action and money damages are sought in another. *See Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 385 (D.N.J. 2015); *Viola v. Fireman's Fund Ins. Co.*, 965 F. Supp. 654, 660 (E.D. Pa. 1997). This Court does not understand *Harris* to support a rule of such breadth. First, the cases cited by TowLine are distinguishable. The *Viola* court relied on *Complaint of Bankers Trust Company v. Chatterjee*,

-6-

636 F.2d 37, 40 (3d Cir. 1980), for its observation that federal and state litigations are not parallel "when the claims, parties or requested relief differs." 965 F. Supp. at 660. However, *Chatterjee* concerned the "first to file" rule as between two actions filed in two federal courts, not as between an action in state court and an action in federal court. As recognized by the court in *Spellman*, these situations and relevant tests for parallelism are markedly different. *See* 150 F. Supp. 3d at 386–87. Turning to *Spellman*, it too is distinguishable because additional claims were asserted in the federal case that were not asserted in the state case, contributing to the *Spellman* court's determination that the actions were not parallel. *Id.* at 385.

Second, the Court is unaware of any subsequent precedential authority from the Third Circuit explicitly or implicitly affirming such an understanding of *Harris*. And based on the Court's independent research, such a rule would appear to be a minority—if not unique—view among the Circuits. That is, the Court is unaware of *any* precedential authority from a federal appellate court holding that actions are not parallel merely because declaratory relief is sought in one action and money damages are sought in another. Rather, other courts have explicitly held that the operative consideration for whether two actions are parallel is whether the state litigation will dispose of all of the issues in the federal case. *See, e.g.*, *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017); *Spectra Commn's Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015); *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001), *cert. denied*, 122 S. Ct. 463 (2001); *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014); *Mass. Biologic Labs. of the Univ. of Mass. v. MedImmune, LLC*, 871 F. Supp. 2d 29, 36 (D. Mass. 2012); *ITW Mortg. Investments III, Inc. v. Mich. Nat'l Bank*, No. 00-71886, 2000 WL 1279166, at *2 (E.D. Mich. 2000). Courts in the Third Circuit have likewise articulated such a rule for parallelism. *See N.C.A.A. v. Corbett*, 25 F. Supp. 3d 557 (M.D. Pa. 2014) ("The

cases do not need to be precisely identical, but "there must be a likelihood that the state litigation will dispose of all the claims presented in the federal case."") (quoting *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510–11 (E.D. Pa. 2002)).

Lastly, *Harris* is distinguishable in terms of the relief sought in the federal- and state-court proceedings. In *Harris*, prisoners in the Philadelphia Prison System sought and obtained injunctive relief related to their conditions of confinement in the state courts. 755 F.2d at 340–41. Other inmates in the prison system (none of whom were plaintiffs in the first action) later sued in federal court seeking damages and injunctive relief related to their conditions of confinement. *Id.* at 341. The state-court case was still ongoing, though the liability phase of the litigation had concluded. *Id.* at 346. The Third Circuit held that abstention under the *Colorado River* doctrine was not appropriate because the cases in state and federal court were not parallel because money damages were not sought in the state-court case and liability had already been determined. *Id.* But even though money damages are likewise not sought in the state-court case here, the state-court plaintiffs are seeking a legal determination under apparently the same legal rules that will directly bear on the federal action for money damages. Unlike in *Harris*, injunctive relief is not at issue, nor are the disparate legal standards for the issuance of injunctive relief. Rather, the case before this Court presents essentially the exact same legal questions and factual issues as the case pending in state court—the only difference between the two actions is the respective procedural postures of the parties.

In sum, this Court does not read *Harris* as establishing a bright-line rule for parallelism based on the relief sought in respective federal- and state-court actions. Rather, Third Circuit authority is clear that a state-court proceeding is parallel when it presents "substantially identical claims, raising nearly identical allegations and issues." *Yang*, 416 F.3d at 204 n.5 (internal

quotation and quotation marks omitted); *see also Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017) ("[P]arallel proceedings are those that are truly duplicative, that is, when the parties and the claims are identical, or at least effectively the same.") (internal quotation and quotation marks omitted).

The Court will assume without concluding that, for the purposes of this Motion, the relevant proceedings are parallel. And there is a substantial basis for the Court to do so. Both the proceedings before the Court of Common Pleas and the proceedings before this Court raise factual issues regarding the condition of the Towboat when it was returned to Blank River, the fuel levels on the Towboat, and the construction and interpretation of the Charter Agreement. Should the Court of Common Pleas reach a final judgment as to these issues, such judgment would be entitled to full faith and credit in this Court and would preclude relitigation of the same issues to the same extent that such a judgment would in Pennsylvania courts. *See* 28 U.S.C. § 1738; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Under Pennsylvania law, issue preclusion applies if the following factors are met:

> (1) the issue decided in the prior adjudication was identical with
> the one presented in the later action; (2) there was a final judgment
> on the merits; (3) the party against whom the plea is asserted was a
> party or in privity with a party to the prior adjudication; and (4) the
> party against whom it is asserted has had a full and fair opportunity
> to litigate the issue in question in a prior action.

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357–58 (3d Cir. 1999) (applying Pennsylvania law). Given the identity of factual disputes and legal issues, such a judgment would resolve the issues presented in Blank River's Complaint and be entitled to preclusive effect. And of course, the parties in both proceedings are identical—save for the procedural posture that each party is assuming as against the other.

However, the Court need not conclusively determine this issue, as the Court concludes that this case lacks the "extraordinary circumstances" necessary to warrant abstention, and thus abstention under the *Colorado River* doctrine would be unjustified whether the proceedings in this Court and the Court of Common Please were parallel or not. *See Hamilton*, 571 F.3d at 308.

### ii. There are no "extraordinary circumstances" justifying abstention.

At the outset, TowLine concedes that three of the six factors informing the abstention determination do not weigh in its favor. This is not an *in rem* action, so the first factor is inapplicable. The second factor clearly weighs against abstention. The federal forum in this case is not inconvenient for the parties, as both this Court and the Court of Common Pleas are geographically located in Pittsburgh, Pennsylvania. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011) (observing that the "inconvenience" factor was irrelevant because "both the federal and state forums [were] located in [the same city]"). TowLine also acknowledges that—because this is a complaint in admiralty—federal law controls this dispute. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) ("With admiralty jurisdiction . . . comes the application of substantive admiralty law.") (quotation omitted). And, therefore, the fifth factor clearly weighs against abstention as well. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender.").

The Court also concludes that the sixth factor—whether the state court will adequately protect the interests of the parties—does not weigh in favor of abstention. This factor is "normally relevant only when the state forum is *in*adequate" and otherwise "carries little weight." *Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) (emphasis in original). In other words, this factor generally serves "only to weigh *against* abstention where a state court is

incapable of protecting a party's interests." *Golden Gate Nat'l Senior Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 F. App'x 348, 352 (3d Cir. 2015) (emphasis in original). Thus, even if the Court assumes that the state court is capable of adequately protecting the parties' interests, such a conclusion would be immaterial for TowLine's arguments *in favor of* abstention.

TowLine relies primarily on the remaining two factors—the order in which jurisdiction was obtained and the desirability to avoid piecemeal litigation—as its basis for arguing that abstention is warranted. But neither of these factors weighs in favor of abstention here. Though it is undisputed that TowLine filed its declaratory judgment action in state court prior to Blank River commencing this action, the precise timing of when jurisdiction was obtained in each court is not a dispositive consideration.[2] There is no "first to file" rule in the *Colorado River* analysis. *See Moses H. Cone*, 460 U.S. at 21 (rejecting a "mechanical" application of this factor in favor of analyzing priority in a "pragmatic, flexible manner with a view to the realities of the case at hand"). Indeed, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.*

Notwithstanding TowLine winning the race to the state courthouse by one week, the declaratory judgment action remains in its earliest stages. No answer has been filed by Blank River, no significant discovery has been undertaken by the parties, and no significant factual findings or legal conclusions have been rendered by the Court of Common Pleas. *Cf. Harris v. Vitran Express, Inc.*, No. 14-0704, 2014 WL 5795687, at *5 (W.D. Pa. Oct. 15, 2014)

---

[2] Blank River asserts in its brief that TowLine was actually served with the Complaint in this case prior to TowLine serving the state-court complaint on Blank River. (Br. in Opp'n at 10, ECF No. 11). Blank River then expanded on this argument during Oral Argument to suggest that jurisdiction had, in fact, actually first been established in this Court rather than in the state court. The Court will not consider this argument at this juncture for two reasons. First, there are no allegations pled in the Complaint to support Blank River's assertions, and this case is at the Motion to Dismiss stage. But more importantly, as explained above, the *exact* moment when each court obtained jurisdiction over the respective actions is irrelevant in this case and in *Colorado River* abstention analyses generally. *See Moses H. Cone*, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions").

(concluding that the "order in which jurisdiction was obtained" factor militated *against* abstention even though a declaratory judgment action was filed in state court six months prior to a federal action being initiated and "a number of minor preliminary matters ha[d] taken place in state court"). At most, this factor does not weigh conclusively in favor of either party, and certainly does not weigh strongly in favor of abstention here.

The final factor for consideration is whether the desirability to avoid piecemeal litigation should compel this Court to abstain. Undoubtedly, should this Court decline to abstain, both a declaratory judgment action and an action for damages involving the same parties and covering the same issues would proceed in this Court and the Court of Common Pleas. But, "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." *Univ. of Md. at Baltimore Cty. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir. 1991) (citing *McClelland v. Carland*, 217 U.S. 268, 282 (1910); *Stanton v. Embrey*, 93 U.S. 548, 554 (1877)). Accordingly, it is well-settled that "*Colorado River* abstention must be grounded on more than just the interest in avoiding duplicative litigation." *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171–72 (3d Cir. 1999). "[R]ather, there must be a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Ryan*, 115 F.3d at 198 (emphasis in original). In other words, the "avoidance of piecemeal litigation" factor only supports abstention "when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Id.* at 198 (citing *Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm'n*, 791 F.2d 1111, 1118 (3d Cir. 1986)).

-12-

The language above from *Ryan v. Johnson* is particularly harmful to TowLine's position, given that the United States Constitution extends the judicial Power of the United States to "all Cases of admiralty and maritime Jurisdiction," U.S. Const. Art. III §2, and 28 U.S.C. § 1333 grants the district courts original jurisdiction in any civil case of admiralty or maritime jurisdiction. It seems as though Congress and our Founding Fathers have clearly indicated that cases such as this one *should* be tried in the federal courts, and at minimum, have not announced a "strong federal policy" that claims such as these should be tried in the state courts. *Colorado River* itself provides a useful contrast. There, the "most important" consideration for the Court in its decision to affirm the District Court's decision to abstain was the "clear federal policy" of adjudicating water rights in unified proceedings, as evinced by the McCarran Amendment's waiver of the United States' sovereign immunity in state courts for certain state-court suits to adjudicate water rights.[3] 424 U.S. at 819–20. The *Colorado River* Court viewed this waiver of sovereign immunity as a Congressional acknowledgement that the states are well-suited to adjudicate water rights, and discussed such proceedings available to the litigants in the Colorado courts. *Id.* The Court also viewed the McCarran Amendment as indicating a strong legislative preference to avoid piecemeal litigation, which could result in inconsistent dispositions as to water rights, which the Court analogized to the general preference to avoid inconsistent dispositions as to property disputes. *Id.* The issues in this case do not present these issues or concerns.

---

[3] The McCarran Amendment allows for the joinder of "the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit." 43 U.S.C. § 666.

Nonetheless, TowLine asserts that the "Savings to Suitors" Clause of 28 U.S.C. § 1333 announces a Congressional declaration and preference to avoid piecemeal litigation. That Clause provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, *savings to suitors* in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333 (emphasis added). TowLine submits that it is such a suitor and is entitled to have its action for declaratory relief heard in state court before a jury. First, though this Court is unaware of any Third Circuit authority so holding, the Fifth Circuit has held in a non-precedential opinion that the availability of a jury trial is not a consideration for a court undertaking a *Colorado River* analysis. *See Transocean Offshore USA, Inc. v. Catrette*, 239 F. App'x 9, 13 (5th Cir. 2007) ("Indeed, the availability of a jury trial is not one of the factors the Supreme Court has authorized lower courts to consider in determining whether a stay is warranted under . . . *Colorado River*."). Given that the Third Circuit has explained that courts examine six factors—which are not described as "non-exhaustive" or anything similarly open-ended—it appears to this Court that the Third Circuit would reach a similar conclusion. *See Hamilton*, 571 F.3d at 308 ("In determining whether an action presents "extraordinary circumstances" we consider six factors[.]").

TowLine relies primarily on *Langnes v. Green*, 282 U.S. 531 (1931), to argue that a separate "abstention doctrine" exists under the Savings to Suitors Clause. As a preliminary matter, it is far from clear whether *Langnes* truly established a distinct federal abstention doctrine. The Seventh Circuit characterized the rule in *Langnes* as a separate abstention doctrine, *see In re Compl. of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 827 (7th Cir. 1996), but on the other hand, *Colorado River* itself—decided forty-five years after *Langnes*—began its analysis by recognizing that the Supreme Court's decisions "have confined the circumstances

appropriate for abstention to three general categories." 424 U.S. at 814–17 (describing the *Pullman*, *Thibodaux*, and *Younger* abstention doctrines). There was no mention of a "form of abstention in admiralty cases under the Savings to Suitors clause," (Br. in Supp. at 7, ECF No. 8), nor, in this Court's estimation, did the Supreme Court in *Langnes* purport to establish a specific abstention doctrine premised on the Savings to Suitors Clause.

In *Langnes*, a shipowner initiated a declaratory action in federal court pursuant to a then-operative statute permitting a shipowner to petition for a declaration from a federal court to limit his liability in relation to certain tortious acts. *See* 282 U.S. at 532–33. The federal respondent had already filed an action in state court seeking damages for personal injuries suffered on the vessel. *Id.* At issue in *Langnes* was the narrow question of whether the district court abused its discretion by not staying the federal action—seeking only declaratory relief—in light of an alleged victim seeking a common-law remedy in state court. *See id.* at 539–40. The *Langnes* Court held that the district court should have stayed the federal action because to do otherwise would "destroy the right of the suitor in the state court to a commonlaw remedy" and "remit[ting] the cause to the state court would be to preserve the rights of both parties." *Id.* at 541. On this narrow point—that a federal court could stay a shipowner's federal action for declaratory relief seeking to limit liability where there is a single claimant—*Langnes* appears to remain good law throughout the Courts of Appeals. *See McCarthy Bros.*, 83 F.3d at 826–28, *cert. denied*, *Campbell v. McCarthy Bros. Co./Clark Bridge*, 519 U.S. 950 (1996); *Gorman v. Cerasia*, 2 F.3d 519, 524–25 (3d Cir. 1993); *In re Compl. of Midland Enters., Inc.*, 886 F.2d 812, 814 (6th Cir. 1989); *Compl. of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988); *Jefferson Barracks Marine Serv., Inc. v. Casey*, 763 F.2d 1007, 1009–10 (8th Cir. 1985).

But those cases, with federal claimants seeking declaratory relief under the Shipowners Limitation of Liability Act ("SLLA"), 46 U.S.C. §§ 30501 *et seq.*, are distinguishable in material respects from this case. In SLLA cases, a shipowner seeks declaratory relief from a federal court limiting its liability in cases of its alleged wrongdoing. Essentially, it is the opposite scenario of what is happening here. Blank River—the shipowner—is seeking *damages* from TowLine in federal court while *TowLine* is seeking to limit its liability through a declaratory action in state court. The primary concern underpinning the *Langnes* Court's ruling—that permitting the federal claimant's action to proceed would destroy the state-court plaintiff's common-law remedy—is simply not present here. Save for TowLine's preferences for a jury trial and state forum—which have never been identified by controlling appellate authority as relevant considerations in this context—TowLine can present the same claims and defenses in federal court as it would be afforded in state court.[4]

Essentially, TowLine asks this Court to read 28 U.S.C. § 1333 as evidencing a Congressional intention that every "suitor" in an admiralty case have its first-choice of a forum, and the "suitor" that files first has its preference honored, *i.e.*, a "first to file" rule. Based on the foregoing reasons, the Court finds no justification to adopt such an expansive reading of § 1333, and therefore concludes that the "avoidance of piecemeal litigation" factor does not weigh in favor of abstention. But more importantly, even if TowLine's understanding of § 1333 were adopted, it would mean that, at most, one out of the six relevant *Colorado River* factors *may* be in TowLine's favor. Given that the balancing of these factors is "heavily weighted in favor of the

---

[4] Even if this Court were to agree with the Seventh Circuit's conclusion in *McCarthy Brothers* by reading *Langnes* as establishing a separate federal abstention doctrine under the Savings to Suitors Clause, the case before this Court would be outside of the scope of such an abstention doctrine. *McCarthy Brothers* and the other appellate authority cited above plainly contextualize *Langnes* as applying in the factual scenario presented in *Langnes*—a shipowner seeking declaratory relief in federal court to limit his liability after a single claimant files an action for damages in state court. *See, e.g., McCarthy Bros.*, 83 F.3d at 827–28. Not only is the SLLA not invoked in this case, but the shipowner is seeking *damages* in federal court rather than declaratory relief to limit its liability.

exercise of jurisdiction" this falls far short of the necessary showing that abstention is warranted here. *See Moses*, 460 U.S. at 16.

In conclusion, an analysis of the six relevant factors in a *Colorado River* abstention analysis demonstrates that there are no "exceptional circumstances" about this case that would justify abstention. Three out of the six factors plainly weigh against abstention or are facially inapplicable. The state court is apparently capable of protecting the parties' interests in this case, but this factor can only weigh *against* abstention, so it is of no help to TowLine. Though TowLine filed its action in state court first, that action remains in its infancy. And finally, there is no strong Congressional preference to avoid piecemeal litigation in this context. The Court will therefore decline to abstain from hearing Count I in this case, which is properly before the Court, as none of the six relevant factors weigh in favor of abstention, and several factors weigh convincingly against abstention.

### b. Pennsylvania law does not apply in this case, but even if it did, Pennsylvania's "gist of the action" doctrine would not bar Counts II and IV.

Pennsylvania's "gist of the action" doctrine operates to "preclude[] plaintiffs from recasting ordinary breach of contract claims into tort claims." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (quoting *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)). Even though Pennsylvania courts have formally recognized this principle, *see Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68–69 (Pa. 2014), the same cannot be said for federal courts sitting in admiralty. Blank River invoked this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h) in the Complaint. (Compl. ¶ 3).[5] Federal courts sitting in admiralty apply the general maritime law as developed by

---

[5] TowLine does not contest the Court's exercise of its admiralty jurisdiction in this case, and the Court concludes that it has admiralty jurisdiction over the case. It is axiomatic that federal courts may exercise admiralty jurisdiction over maritime contracts, *see, e.g., Andrews v. Wall*, 44 U.S. 568, 572–73 (1845), such as agreements to charter a

the federal courts proceeding "in the manner of [] common law court[s]." *See The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2278 (2019) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489–90 (2008)). This is not a diversity case; Pennsylvania law does not apply. *See Yamaha*, 516 U.S. at 206 ("With admiralty jurisdiction . . . comes the application of substantive admiralty law.") (quotation omitted).

TowLine submits that, because the Charter Agreement provides that it is to be interpreted by the general maritime law of the United States as "supplemented by the laws of the Commonwealth of Pennsylvania," that the gist of the action doctrine is applicable in this case.[6] The Court is not convinced. First, even if the Charter Agreement's interpretation is supplemented by Pennsylvania law, TowLine has not provided a sufficient basis (nor is the Court aware of one) to extend this choice of law in *contractual interpretation* so far as to apply substantive Pennsylvania law to the asserted *tort* claims in the Complaint. Second, TowLine has not identified a supposed "gap" or ambiguity in the general maritime law in this case—relating to

vessel, *see, e.g., Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 490–91 (1st Cir. 1985) (Breyer, J.). The Court has reviewed the Charter Agreement and finds that it concerns the operation of a ship and its management, and is thus a maritime contract. *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 (3d Cir. 1992). The Court is unaware of a precedential Third Circuit or Supreme Court decision indicating that a Court may exercise supplemental jurisdiction over related tort claims in an admiralty case premised on a breach of a maritime contract. However, the district courts have original jurisdiction of any "civil *case* of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). The Court thus concludes that it has jurisdiction over the remaining claims in the Complaint because they arise from the same common nucleus of operative facts as the breach of maritime contract claim and thus comprise the admiralty "case" before the Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); *see also* 28 U.S.C. § 1367(a). At least one district court in this Circuit, relying on persuasive authority from outside of the Third Circuit, endorses such an understanding of the jurisdictional grant in § 1333. *See Dadgostar v. St. Croix Fin. Ctr., Inc.*, No. 10-00028, 2011 WL 4383424, at *4–*5 (D.V.I. Sept. 20, 2011) (citing *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1296–97 (2d Cir. 1990); *Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1346–47 (5th Cir. 1991)).

[6] It should be noted that this argument was underdeveloped in TowLine's briefing for this Motion, to put it mildly. During Oral Argument, counsel for TowLine argued (without discussion of applicable authority) that the Court should look to Pennsylvania law to supplement the "gaps" of federal maritime law in this case, and this supplementation provides an avenue for the gist of the action doctrine to operate. The Court was and is not persuaded by this argument, as TowLine has failed to provide a compelling justification as to *why* there is a gap and/or ambiguity in federal maritime law here so as to justify importation of what is arguably a unique feature of Pennsylvania law. *See* Lauren Anthony, *Home is Where the Confusion is: Pennsylvania Formally Adopts the "Gist of the Action" Doctrine and Builds a House for Ambiguity in* Bruno v. Erie Insurance Co., 61 Vill. L. Rev. 235, 240 n.23 (2016) (observing that the gist of the action doctrine is "relatively unique to Pennsylvania law" and discussing the limited instances in which courts outside of Pennsylvania have applied an analogous doctrine).

-18-

interpretation of the Charter Agreement or otherwise—such that *any* supplementation by Pennsylvania law is necessary. *Cf. Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 709 (5th Cir. 2017) ("[S]tate law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system.") (quoting *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972) (en banc)); *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 49 (2d Cir. 2008) (explaining that, in admiralty, state law may supplement "any area of contract law for which federal common law does not provide"). In short, this is a case under federal law, not Pennsylvania law, so Pennsylvania's gist of the action doctrine does not apply.

What is more, even if Pennsylvania law *did* apply in this case, such that the gist of the action doctrine applied as well, the Court would nonetheless conclude that the doctrine would not bar the asserted tort claims. The mere existence of a contractual relationship between two parties does not automatically bar one party from bringing tort claims against the other for conduct during performance of the contract. *See Bruno*, 106 A.3d at 69. The critical inquiry is whether the cause of action is premised on "breaches of duties imposed by law as a matter of social policy" rather than for "breaches of duties imposed by mutual consensus agreements between particular individuals." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007) (quotation and citations omitted). As recently observed by the Third Circuit, the relevant inquiry is as follows:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract— then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 256 (3d Cir. 2017) (quoting *Bruno*, 106 A.3d at 68) (internal citations omitted). In other words, would TowLine's alleged conduct constitute conversion and/or negligent bailment even if TowLine and Blank River had never entered into the Charter Agreement?

Moreover, the Court is mindful that this action is at the motion to dismiss stage and the Federal Rules of Civil Procedure authorize pleading in the alternative. Fed. R. Civ. P. 8(d)(2). For this reason, "[a] court should be cautious when determining that a claim should be dismissed under the gist of the action doctrine." *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-236, 2009 WL 4572911, at \*4 (W.D. Pa. Dec. 4, 2009). This is especially so where, as here, the moving party disputes the validity or enforceability of the contract. *See, e.g.*, *Premier Payments Online, Inc. v. Payment Systems Worldwide*, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012) ("When the validity and if valid, the effect, of a contract is uncertain, courts have found the application of the gist of the action doctrine on a motion to dismiss to be inappropriate.") (collecting cases). TowLine asserts in its Brief in Support that it "disputes [Blank River's] allegation that the Charter attached to the [Blank River] Complaint . . . was in effect." (Br. in Supp. at 9 n.3, ECF No. 8).

The Court has little difficulty concluding that Blank River's allegations derive from greater societal duties rather than solely from the mutual consensus between Blank River and TowLine as memorialized in the Charter Agreement. "A conversation is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). Blank River owns the Towboat in question and alleges that "TowLine tortiously converted certain items of equipment on the Towboat such as

appliances, firehoses, life preservers, fuel gauge rods and the like, all of which must now be replaced in order to make the Towboat serviceable for charter." (Compl. ¶ 34). Surely, if TowLine did indeed destroy Blank River's property aboard the Towboat, said acts would be tortious regardless of whether Blank River had chartered the Towboat to TowLine. These assertions involve allegations of harm to Blank River's property beyond non-compliance with the Charter Agreement. And further, because Blank River owns the property that was the subject of the contract and was allegedly converted, the gist of the action doctrine is not applicable. *See Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 623 (E.D. Pa. 2010) (collecting cases for the proposition that "[w]hen . . . a plaintiff has a property interest in the thing subject to the conversion claim, the gist of the action doctrine does not bar a tort theory of recovery, despite the fact that the property is also the subject of a separate contract").

The Court reaches a similar conclusion with respect to the negligent bailment claims. Under Pennsylvania law, a "bailment" involves "a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with it according to his directions or kept until he reclaims it." *Price v. Brown*, 680 A.2d 1149, 1151 (Pa. 1996) (quoting *Smalich v. Westfall*, 269 A.2d 476, 480 (Pa. 1970)). An actionable breach occurs when the bailee fails to return the property or returns it in a damaged condition. *Am. Enka Co. v. Wicaco Mach. Corp.*, 686 F.2d 1050, 1053 (3d Cir. 1982). Liability under this theory is predicated on the bailee failing to exercise reasonable care as is required of a bailee under the common law. *Id.* This is a separate and independent basis of recovery than the breach of contract claim, because "[a]lthough the bailor-bailee relationship has its origins in contract, liability is based on the tort concept of negligence." *Id.* The common law of bailment sets the standard of care for the

negligent bailment claim whereas the Charter Agreement provides the standard of care for the breach of contract claim. (*See, e.g.*, Charter Agreement ¶ 9). Both theories may continue at this stage of the litigation. *See, e.g.*, *Penn City Invs., Inc. v. Soltech, Inc.*, No. 01-5542, 2003 WL 22844210, at *9 (E.D. Pa. Nov. 25, 2003) (allowing a breach of contract claim and a negligent bailment claim to proceed because "[f]ailure or success under one theory does not automatically guarantee the same result under the other."). This is especially so because, as mentioned, TowLine disputes the validity of the Charter Agreement and pleading in the alternative is authorized. Fed R. Civ. P. 8(d)(2).[7]

### c. The unjust enrichment claim cannot be dismissed at this time because the validity of the Charter has been placed in dispute.

TowLine argues that Count III, asserting a claim of unjust enrichment, should be dismissed because Blank River has an adequate remedy at law. A party cannot recover under an unjust enrichment theory when a written or express contract exists that would govern the conduct at issue. *See, e.g.*, *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.*, 929 F. Supp. 2d 460, 474 (W.D. Pa. 2013). However, because the Federal Rules of Civil Procedure authorize pleadings in the alternative, the Court concludes that it would not be appropriate to dismiss Count III at this juncture due to TowLine disputing the validity and effect of the Charter Agreement. If later developments reveal that the Charter Agreement was, in fact, not valid and in

---

[7] It appears to the Court that the elements of the maritime torts of conversion and negligent bailment differ from those analogous torts under Pennsylvania law in potentially material respects. For instance, "the federal maritime tort of conversion requires a party to plead that a defendant appropriated the property in question for its own use or gain and that the wrongful act occurred on navigable waters." *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 369 (S.D.N.Y. 2015) (quotation omitted); *see also Minott v. M/Y BRUNELLO*, 891 F.3d 1277, 1282–83 (11th Cir. 2018). And, a claim of negligent bailment under admiralty law requires that "(1) delivery to the bailee is complete and (2) he has exclusive possession of the bailed property, even as against the property owner." *QT Trading, L.P. v. M/V SAGA MORUS*, 641 F.3d 105, 111–12 (5th Cir. 2011) (quotation and citations omitted). But TowLine did not move to dismiss Blank River's tort claims on the basis of whether the causes of action were sufficiently pled; TowLine's asserted basis for dismissal was limited to the "gist of the action" argument. Thus, the Court expresses no opinion at this time as to whether Blank River adequately pled the tort claims under the applicable substantive law of this case, federal maritime law.

effect during the relevant times in the Complaint, Blank River may be able to recover under a quasi-contract theory for unjust enrichment. *See Santova Logistics, Ltd. v. Castello 1935, Inc.*, No. 12-00007, 2012 WL 4408733, at *3 (W.D. Va. June 19, 2012) (denying a motion to dismiss and asserting admiralty jurisdiction over a quasi-contractual dispute because unjust enrichment claims based on quasi-contractual theories are often brought by parties who "for various reasons, could not prevail on a contract claim.") (quoting *Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 722 (4th Cir. 2011)); *see also Freeman v. Pittsburgh Glass Works, LLC*, No. 10-1515, 2011 WL 832897, at *5 (W.D. Pa. Mar. 3, 2011) (permitting an unjust enrichment claim to proceed past the motion to dismiss stage despite concluding that an alternatively pleaded breach of contract claim was based upon an invalid contract and therefore must be dismissed).

## IV. CONCLUSION

For the foregoing reasons, the balance of TowLine's Motion at ECF No. 7 will be DENIED, except as to Count V as a "stand-alone" claim. An appropriate Order will issue.

Mark R. Hornak
Chief United States District Judge

Dated: August 21, 2019

cc: All counsel of record

-23-